696 N.W.2d 617 (2005)
In the Interest of L.E.H., Minor Child,
B.S., Father, Appellant.
No. 04-1746.
Court of Appeals of Iowa.
March 16, 2005.
*618 Patrick E. Ingram of the Mears Law Office, Iowa City, for appellant.
Thomas Miller, Attorney General, Kathrine Miller-Todd, Assistant Attorney General, J. Patrick White, County Attorney, and Deborah Minot, Assistant County Attorney, for appellee-State.
Shelly Mott, Coralville, guardian ad litem for minor child.
Considered by SACKETT, C.J., and ZIMMER and HECHT, JJ.
HECHT, J.
A father appeals the order terminating his parental rights to his daughter. We conclude clear and convincing evidence does not support the termination, and therefore reverse the termination order.

Background Facts and Proceedings.
Melinda H. and Bryan S. are the parents of Lily H., who was born on July 20, 2003. Lily was conceived after a short relationship between Melinda and Bryan, and Bryan was not aware of the pregnancy until approximately six weeks before Lily's birth. Just prior to the birth, Melinda, who had significant mental health and substance abuse problems, moved from a substance abuse treatment program to an apartment. In August of 2003, the Iowa Department of Human Services (DHS) received a report that Melinda had been drinking and driving while caring for Lily. In October of the same year, Melinda was found lying in a drunken stupor with Lily next to her. After Lily was removed from Melinda's care, Bryan expressed to DHS an interest in gaining custody of Lily. On October 29, 2003, Melinda stipulated that Lily was a child in need of assistance (CINA).
The State filed a petition to terminate both Melinda's and Bryan's parental rights on May 28, 2004. At the hearing on the petition, Melinda's counsel advised the court that, although she did not consent to termination, she was waiving her right to be present and participate in the proceedings. Following the hearing, the court terminated both Melinda's and Bryan's parental rights. It terminated Bryan's rights pursuant to Iowa Code section 232.116(1)(h) (2003) (child three or younger, CINA, removed for last six months, cannot be returned to parent). Bryan appeals.

Scope and Standards of Review.
We review termination orders de novo. In re R.F., 471 N.W.2d 821, 824 (Iowa 1991). Our primary concern is the best interests of the children. In re C.B., 611 N.W.2d 489, 492 (Iowa 2000). The grounds for termination must be proved by clear and convincing evidence. In re T.B., 604 N.W.2d 660, 661 (Iowa 2000). Our primary concern is the best interest of the child; we look to both the child's long-range and immediate interests. In re M.T., 613 N.W.2d 690, 691 (Iowa Ct.App.2000).

Bryan's Contentions.
On appeal, Bryan maintains clear and convincing evidence does not support the juvenile court's determination that Lily could not be returned to him at the present time without being subjected to some harm which would justify her adjudication as a child in need of assistance under section 232.116(1)(h)(4). He further maintains the court improperly based the termination, in part, on its conclusion the foster parents would provide a better home for Lily. Finally, he argues the State imposed conditions evidencing a sexual bias against men and failed to make reasonable efforts to reunite him with Lily.

Iowa Code section 232.116(1)(h).
We first address whether clear and convincing evidence supported the termination *619 of Bryan's parental rights under section 232.116(1)(h). As part of its burden of proof, the State was required to prove that if returned to Bryan's custody at the time of the termination hearing Lily would be exposed to harm which would justify her adjudication as CINA. See Iowa Code § 232.102(5)(b) ("Preserving the safety of the child is the paramount consideration."). In its termination order, the district court determined Lily "cannot be placed in her father's custody without risk to her health and safety...." The order briefly listed three incidents which were deemed by social workers and the foster mother to be "safety concerns." First, the court found Bryan had used a knife in a "careless manner" around Lily. Second, it noted an occasion where Bryan ran Lily's bath water too warm. Third, it recounted an incident in which Bryan held Lily on his hip while cooking.
After a careful review of the record, we find these three incidents did not pose such a risk to Lily's health and safety as to preclude her placement with Bryan. We acknowledge that Lily's foster parent reported Bryan used a serrated knife to scrape food onto the tray of Lily's high chair while the child was sitting in the chair. However, we do not believe that Bryan's conduct on that occasion or the risk of harm to which Lily was then exposed would justify a CINA adjudication. We have also considered the evidence that Bryan held Lily on his hip while standing near the stove and cooking. Again, there is no evidence that Lily was injured, nor do we have reason to believe that Bryan would repeat the behavior after being cautioned against cooking while holding his daughter. Finally, we consider the evidence that Bryan once ran bath water that was believed to be too hot for Lily's comfort. Even the supervising social worker who reported this incident conceded the bath water "was not dangerously hot," and noted that Bryan recognized the water may have been too hot and added cold water to alleviate any danger to Lily. We find these three incidents, while perhaps indicating Bryan's need to learn and grow as a parent, are fully understandable for a first-time, young parent, and do not reach a level constituting an adjudicatory concern.
Certain of the district court's findings support our conclusion that Bryan has the potential to be a successful parent. In particular, the court found "Bryan is a likeable young man living a lifestyle common to similarly situated college students in Iowa City." The district court further observed: "Indeed Bryan is a fine young man. Under future circumstances when his life becomes more settled and has prepared for parenthood, there is no reason to believe he will not be capable of being an effective parent." After a careful review of the record, we agree with these findings and believe Bryan possesses the desire, mental capacity, and intellectual ability to become a successful custodial parent.
Bryan did not miss any scheduled visits with Lily. He cooperated fully with requested psychological and substance abuse evaluations. The psychological evaluator concluded Bryan "is intellectually capable of parenting" and found "no evidence of a psychological disorder that would preclude Bryan from parenting his daughter should he be granted custody." At the time of the hearing, Bryan had child-proofed his apartment and had procured appropriate children's toys, a play mat, a high chair, various baby books, a crib, and other necessities. He provided clothing, diapers, wipes, food, formula, bottles, and other supplies at his visits. Thus, it appears Bryan is taking advantage of services and has undertaken reasonable steps required of him by his case plan and by service providers.
*620 We note that Bryan was not permitted more than supervised visitation prior to the termination hearing, but this circumstance was not solely due to Bryan's shortcomings or inexperience. We believe DHS's decision to withhold semi-supervised and unsupervised visitation was unjustified because none of the criticisms of Bryan's parenting posed the types of risks that would justify such restriction of his contacts with Lily. Moreover, we conclude the parenting deficits perceived by DHS[1] did not justify its failure to move intentionally and promptly toward unification of Bryan and Lily in a parent-child custodial relationship.

Conclusion.
We conclude clear and convincing evidence was not presented to prove Lily could not be placed with Bryan at the time of the termination hearing. The clear and convincing evidence simply does not establish that Lily would have been subjected to adjudicatory harm if her custody had been transferred to Bryan at the time of the termination hearing. While the record amply supports a finding that Bryan still has much to learn, he is a well-intentioned, caring, young parent. Like other new parents, he is inexperienced in the art of child rearing. And like most other new parents, he will learn "on the job." We do not find clear and convincing evidence in this record to prove that Lily will be exposed to adjudicatory harm as Bryan becomes a more experienced parent.
We acknowledge that a parent's protected interest in the integrity of the family unit is not absolute. It may be forfeited by certain conduct. In re Dameron, 306 N.W.2d 743, 745 (Iowa 1981). We also recognize the State has a duty to intercede when parents abdicate their responsibility to provide proper care for children. See In re I.L.G.R., 433 N.W.2d 681, 689 (Iowa 1988). This duty often causes the State's representatives to adopt an adversarial posture to protect children from parents who would endanger them. While acting in furtherance of that duty, however, the State has a concomitant statutory duty to provide reasonable services to achieve reunification of parents and children.
We recognize these duties sometimes appear quite inconsistent and at times irreconcilable. To be sure, they demand a delicate balance on the part of those who represent the State's interests. For if not properly balanced, the State's adversarial posture adopted in furtherance of the protection of children can seriously compromise and undermine the goal of reunification. After carefully reviewing the record in this case, we conclude the delicate balance of the State's duties was not achieved in this case. We find the State failed to prove by clear and convincing evidence that, at the time of the hearing, a transfer of Lily's custody to Bryan would expose Lily to adjudicatory harm. We therefore reverse the order terminating his parental rights.
REVERSED.
NOTES
[1] One of the perceived parenting deficits related to Bryan's failure to submit to DHS an assigned term paper on parenting. Bryan was a college student who held a part-time job. He admitted he procrastinated and ultimately did not provide the assigned paper to DHS because writing is difficult for him. Although we believe the DHS representative who assigned the writing task had sincere intentions and was motivated by a good faith desire to provoke Bryan to undertake auxiliary education to supplement the services provided to him by the State, we are not inclined to view a parent's failure to produce a term paper assignment as an important factor in our assessment of his ability to safely supervise his child.