**IN THE COURT OF APPEALS OF IOWA**

No. 4-033 / 13-1864
Filed February 5, 2014

**IN THE INTEREST OF L.I.,**
    **Minor Child,**

**K.I., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Cass County, Susan Larson Christensen, District Associate Judge.

A mother appeals the termination of her parental rights.  **AFFIRMED.**

Karen K. Emerson Peters, Atlantic, for appellant.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant Attorney General, and Daniel Fiestner, County Attorney, for appellee.

David Weiderstein of Otto, Lorence & Weiderstein, P.C., Atlantic, for father.

Karen Mailander, Anita, attorney and guardian ad litem for minor child.

Considered by Vogel, P.J., and Tabor and McDonald, JJ.

**TABOR, J.**

A mother appeals a juvenile court order terminating her parental rights to her son, L.I., under Iowa Code sections 232.116(1)(e), (h), and (i) (2013). She argues the State failed to offer clear and convincing evidence of the statutory grounds for termination.

## I. Background Facts and Proceedings

L.I. came to the attention of the Department of Human Services (DHS) in April 2102 due to allegations he was left in the care of an uncle who failed to provide adequate supervision. L.I. suffered a skull fracture when he fell from a bed. L.I.'s parents, Kelly and Brandon,[1] were evicted from their home in May 2012. Kelly also has three older daughters, then ages six, five and two. The DHS removed L.I. and his sisters from Kelly's care in June 2012, when L.I. was less than four months old. The juvenile court adjudicated all four siblings as children in need of assistance (CINA) in July 2012. The DHS placed L.I. and his sisters in family foster care, which has been provided by his paternal grandparents who are licensed foster care providers.

In late 2012, L.I.'s grandparents reported Brandon tried to sell L.I. to them for $5,000 (later lowering the price to $1,000). The grandparents told Brandon it was illegal to sell a child. While Kelly maintains this proposition was not her idea, she was present and made no effort to distance herself from it. In fact, the grandparents remember her saying, "We should at least get something for my pain and suffering." Consistent with these sentiments, the case workers testified

---

[1] Brandon is not a party to this appeal.

that Kelly was not closely bonded with her son and did not make a concerted effort to develop an individualized relationship with him, separate from her older daughters.

At no time from removal to termination did Kelly ever have semi-supervised or unsupervised visits. The workers were not confident that she could supervise all four children at one time.

The State has twice charged Brandon with domestic abuse assault for violent acts against Kelly, once in October 2012 and a second time in March 2013. The second incident occurred when contact was prohibited by a protective order. At the time of the September 2013 hearing, Kelly was seven months pregnant with Brandon's child.

Kelly did make personal progress during the course of this case. She earned a certificate as a nursing assistant (CNA) in March 2013 and was able to find employment. Although she was fired from a nursing home in Creston in August 2013, she was able to find new employment as a CNA in a care center in Afton that same month. Kelly also obtained a driver's license and moved into a furnished apartment, though she did not allow the DHS case workers to inspect the residence before the time of the hearing.

The State filed a termination of parental rights petition on May 28, 2013. The juvenile court held a hearing on September 18, 2013. The guardian ad litem recommended termination of the rights of both parents. The juvenile court issued an order on November 20, 2013, terminating the rights of both Kelly and Brandon. Kelly now appeals that termination.

**II.     Standard of Review**

We review the juvenile court order terminating parental rights de novo. *In re H.S.*, 805 N.W.2d 737, 745 (Iowa 2011). We give weight to the factual determinations but are not bound by them. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006).

**III.    Analysis**

We uphold a decision to terminate parental rights when the State has offered clear and convincing evidence of the statutory grounds under Iowa Code section 232.116(1). *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). Evidence is clear and convincing when there are no serious or substantial doubts as to the correctness of conclusions of law drawn from the evidence. *Id.* When the juvenile court terminates parental rights on more than one statutory ground, we need only find a basis to terminate under one of the cited sections to affirm. *In re S.R.*, 600 N.W.2d 63, 64 (Iowa Ct. App. 1999).

We look at the evidence supporting termination of the mother's rights under section 232.116(1)(h). To terminate parental rights under subsection (h), the State must show by clear and convincing evidence the child is three years old or younger, has been adjudicated CINA, has been removed from the parent's care for at least the last six consecutive months, and cannot be returned to the parent's custody at the present time.

Kelly does not contest that L.I. is under three years of age, has been adjudicated CINA, or has been removed from her care for the last six consecutive months. Kelly only challenges that L.I. cannot be returned to her

custody at the "present time." Kelly argues that after a short transition period, she would be able to resume custody of L.I.

After reviewing the record, we find the State met its burden to prove by clear and convincing evidence that L.I. could not be returned to Kelly's care at the "present time." *See In re L.E.H.*, 696 N.W.2d 617, 620 (Iowa Ct. App. 2005) (interpreting "present time" as the time of the termination hearing). Kelly admitted at the trial "it wouldn't be possible to have [L.I.] come home today." She also testified she would need to be allowed unsupervised visits before L.I. could move permanently to her home because it would be "traumatic" for L.I. to leave the care of his grandparents.

Even if L.I. could be quickly transitioned to Kelly's home, the DHS workers did not believe L.I. would be safe there. The DHS did not offer Kelly semi-supervised or unsupervised visits, even after sixteen months of services, because she had not demonstrated she could provide adequate supervision for all four children. Moreover, the workers observed that Kelly did not have the same bond with L.I. as she did with her three daughters. They encouraged her to take advantage of more one-on-one opportunities to visit, but she only did so on one occasion. By contrast, L.I. has developed a deep bond with the paternal grandparents.

While Kelly has been attending visits regularly since February 2013, she was not consistent before that time. As we have often said, parenting cannot be turned off and on like a spigot. It must be constant, responsible, and reliable. *In re L.L.*, 459 N.W.2d 489, 495 (Iowa 1990). We consider Kelly's initial attitude of

indifference following L.I.'s removal and her choice to violate the no-contact order with Brandon, resulting in another pregnancy. Overall, we find the juvenile court properly determined that termination was proper under section 232.116(1)(h).

Kelly has not referenced Iowa Code sections 232.116(2) or (3) in her petition on appeal. Accordingly, we do not question the juvenile court's best interest determination. *See In re A.B.*, 815 N.W.2d 764, 776 (Iowa 2012).

**AFFIRMED.**