# IN THE COURT OF APPEALS OF IOWA

No. 13-1085
Filed April 30, 2014

IN THE INTEREST OF K.J. and H.H.,
     Minor Children,

R.H., Mother,
     Appellant,

S.H., Father,
     Appellant.

_____

Appeal from the Iowa District Court for Polk County, Constance C. Cohen,
Associate Juvenile Judge.


A mother appeals the termination of her parental rights to her son and
daughter. **AFFIRMED.**


Joseph Vogel of Turner & Vogel, Des Moines, for appellant-mother.

Erin M. Carr of Carr & Wright, P.L.C, Des Moines, for appellant-father, of
H.H.

Thomas J. Miller, Attorney General, Janet Hoffman, Assistant Attorney
General, John Sarcone, County Attorney, and Andrea Vitzthum, Assistant County
Attorney, for appellee.

John P. Jellineck, Polk County Juvenile Defender's Office, Des Moines,
attorney and guardian ad litem for minor children.


Considered by Vaitheswaran, P.J., and Tabor and Bower, JJ.

**TABOR, J.**

Rebecca appeals from the juvenile court order terminating her parental rights to her daughter H.H., who is now five years of age, and her son K.J., who is now ten. She challenges the statutory grounds and argues terminating her rights is not in the best interest of the children. We find the State proved by clear and convincing evidence the children could not be returned home under Iowa Code section 232.116(1)(f). We also conclude the short-term safety and long-term emotional health of H.H. and K.J. are best achieved by terminating the mother's rights. Accordingly, we affirm.

## I. Background Facts and Proceedings

Rebecca, who is now thirty-nine, has suffered from mental health problems since she was a child herself. She has been diagnosed with bipolar disorder and borderline personality traits, as well as post traumatic stress disorder. Her mental illness has required hospitalization on approximately ten occasions—the most recent being in May 2013.

Her children first came to the attention of the juvenile court in April 2012 when their welfare was endangered by the threat of violence in the home. H.H.'s father, Steve, had a history of assaulting Rebecca, resulting in a court order prohibiting him from contact with her. Rebecca repeatedly aided Steve's violations of the no-contact order by allowing him to return home—exposing the children to the risk of domestic violence.

Rebecca also had a string of founded child abuse reports from the Department of Human Services (DHS). First, in 2004, newborn K.J. was

discovered to have an illegal drug in his system. The DHS determined Rebecca was the person responsible for the exposure. In 2008, the DHS found Rebecca denied K.J. critical care and failed to provide proper supervision. Most recently, in March 2011, the DHS found Rebecca denied critical care and failed to supervise both H.H. and K.J.

The juvenile court granted temporary removal of the children on April 27, 2012. The State filed a child in need of assistance (CINA) petitions on behalf of both H.H. and K.J. on April 30, 2012 pursuant to Iowa Code section 232.116(6)(b)(2) and (n) (2011). Following an uncontested hearing on May 24, 2012, the district court adjudicated both children as CINA and affirmed the removal. Rebecca stipulated to the CINA determination.

At an October 18, 2012, review hearing the court found Rebecca needed to be more consistent in attending therapy appointments. The mother admitted she was currently unable to meet her children's needs. Rebecca's contact with the children remained supervised.

At a January 16, 2013, review hearing, the court found the children were thriving in their placement with a maternal aunt, but they missed their mother. Rebecca and the children began having overnight visits but Rebecca was unable to demonstrate the necessary stability in her contact with the children. Rebecca failed to attend therapy consistently. Rebecca would also promise the children she would attend events and appointments with them and then would fail to show up, greatly upsetting the children. K.J's therapist testified when Rebecca does not show up, "[K.J.] gets very upset if his mom doesn't show up or if he hasn't

seen her as promised and his aggression escalates. In turn, many sessions are working on coping skills to decrease the anger outbursts." Rebecca has not progress to trial home placements at any time since the children's removal.

The State filed its petition to terminate parental rights on April 29, 2013. Less than one month later, on May 22, 2013, police were called to Rebecca's home following a report of a suicide attempt. Rebecca called her mental health provider and informed her she wanted to hurt herself. The mental health provider called a cab to take Rebecca to the hospital, but Rebecca did not come to the door. A locksmith was called and Rebecca was found sleeping in her bed. She admitted taking four Ativan tablets and to being suicidal. Medical personnel transported Rebecca to the hospital where she remained in in-patient care for one week. She minimized the event afterward, saying she only took the pills to calm her anxiety.

On June 5, 2013, the court held a contested termination hearing. The guardian ad litem supported the State's petition to terminate. On June 26, 2013, the district court terminated the parental rights of Rebecca to both children under Iowa Code sections 232.116(1)(d), (f), and (k) (2013). The court also terminated the rights of K.J.'s father Ronald, who is not challenging the order, and the rights of H.H.'s father, Steve, and all putative fathers. Steve's attorney filed an application for extension of time to file his petition on appeal. Our supreme court denied that application on April 8, 2014, and transferred the case to our court on April 17, 2014. We now address Rebecca's petition on appeal.

**II.    Standard of Review**

We conduct a de novo review of termination of parental rights proceedings. *In re H.S.*, 805 N.W.2d 737, 745 (Iowa 2011). Although we are not bound by the juvenile court's findings of fact, we give them weight, especially in assessing witness credibility. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). We will uphold an order if the evidence in support of termination is "clear and convincing," which is defined as the absence of any "serious or substantial doubts" as to its correctness or to the conclusions drawn from it. *Id.*

**III.    Analysis**

The juvenile court relied on three statutory grounds for termination. We need only find termination under one ground to affirm. *In re S.R.*, 600 N.W.2d 63, 64 (Iowa Ct. App. 1999). We find clear and convincing evidence supports termination under subsection (f). Under that provision, the State must prove:

> (1) the child is four years of age or older; (2) the child has been adjudicated a child in need of assistance pursuant to section 232.96; (3) the child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days; (4) there is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents.

Iowa Code § 232.116(1)(f)

Rebecca does not contest the first three factors. She argues the State did not prove by clear and convincing evidence the children cannot be returned to her custody. *See In re L.E.H.*, 696 N.W.2d 617, 620 (Iowa Ct. App. 2005) (interpreting "present time" as the time of the termination hearing).

Rebecca has faced a life-long struggle with serious mental illness. Throughout the juvenile court case, she has been inconsistent in taking her medications and has missed many therapy sessions. Given her most recent hospitalization, it is apparent the children could not be safely returned to her care at the time of the termination hearing. Her suicide attempt came just weeks before the termination hearing and only a month before the court filed its termination order.

In addition and perhaps related to her mental health problems, Rebecca has engaged in relationships with violent men. Despite recognizing Steve poses a threat, three months before the termination hearing, Rebecca was still allowing him into her home. She downplays his danger, saying he is only violent when he is under the influence. The relationship was so significant to Rebecca that she took Steve's last name, though they were never married. Her lack of judgment on this front raises a legitimate question concerning her ability to maintain a safe environment for the children. *See In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially) (stating a child's safety and need for a permanent home are the defining elements in a child's best interests).

We also reject Rebecca's assertion that termination of her rights is not in the children's best interests. *See* Iowa Code § 232.116(2). "Section 232.116(2) requires us to 'give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child.'" *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).

The juvenile court recognized Rebecca loves her children and they love her. But the strength of their bond does not outweigh the children's need for safety, consistency, and permanency. If anything, the closeness of their relationship makes Rebecca's pattern of disappointing the children by not showing up at their activities or not following through on her promises all the more poignant and painful. Rebecca has failed to make the necessary strides to provide for the children as she struggles to keep her own life on an even keel.

The juvenile court found it significant Rebecca had only completed four weeks of a twenty-one week STEPPS (Systems Training for Emotional Predictability and Problem Solving) program intended to improve her mental health and social functioning. The juvenile court also noted Rebecca attended only three of K.J.'s fourteen appointments and only two of H.H.'s seven appointments. Along with this, Rebecca has missed several visitation opportunities. Rebecca has received substantial support services through the DHS, yet continues to miss vital opportunities to help herself and to be there for her children. Parenting must be constant, responsible, and reliable. *In re L.L.*, 459 N.W.2d 489, 495 (Iowa 1990).

Finally, Rebecca asks the court for additional time for reunification, or in the alternative, requests a guardianship be granted to the children's maternal aunt, who has been caring for them. We find Rebecca has had significant time, almost two years, to achieve reunification and has been unable to make enough progress to resume full-time parenting. Therefore, additional time is not appropriate.

A guardianship with a relative is not an appropriate permanency option in this case. Guardianship is not a legally preferable alternative to termination of parental rights and adoption. *In re L.M.F.*, 490 N.W.2d 66, 67–68 (Iowa Ct. App. 1992). Termination is the preferred solution when a parent is unable to regain custody within the time frames of chapter 232. *See In re C.K.*, 558 N.W.2d 170, 174 (Iowa 1997) ("An appropriate determination to terminate a parent-child relationship is not to be countermanded by the ability and willingness of a family relative to take the child."). Also, the relationship between Rebecca and her sister, who has been the children's caretaker, is strained at times. The maternal aunt has expressed an unwillingness to supervise the visits between Rebecca and the children. We conclude termination of the mother's parental rights is in the child's best interests.

**AFFIRMED.**