# IN THE COURT OF APPEALS OF IOWA

No. 18-0696
Filed September 12, 2018

IN THE INTEREST OF J.B.,
Minor Child,

BARBARA E. MANESS, guardian ad litem,
    Appellant.

_____

Appeal from the Iowa District Court for Clinton County, Phillip J. Tabor, District Associate Judge.

The guardian ad litem for J.B., joined by the State, appeals both the district court order dismissing the State's petition to terminate parental rights and the permanency order continuing reunification efforts with the mother.  **REVERSED.**

Barbara E. Maness, Davenport, appellant.

Thomas J. Miller, Attorney General, and Anagha Dixit, Assistant Attorney General, for appellee State.

Neill A. Kroeger, LeClaire, for appellee mother.

Considered by Potterfield, P.J., and Bower and McDonald, JJ.  Tabor, J. takes no part.

**POTTERFIELD, Presiding Judge.**

The guardian ad litem (GAL) for J.B. and the State appeal the district court's April 2018 permanency order continuing reunification efforts and the court's dismissal order finding the State failed to prove the grounds for the termination-of-parental-rights petition as to the mother.[1]  On appeal, the GAL argues the State proved the grounds for termination under Iowa Code section 232.116(1)(d), (e), (h), (i), or (*l*) (2018) and termination is in the best interests of the child.

**I. Background Facts and Proceedings.**

The Iowa Department of Human Services (DHS) was first involved with J.B. in March 2015 when his umbilical cord tested positive for marijuana at birth.  A founded child-abuse assessment was completed at that time.  The child remained in his mother's care.

In September 2016, DHS was alerted to concerns the mother was using heroin.  The mother tested positive for benzodiazepines, methadone, and THC in a urine analysis.  Both the mother and J.B. tested positive for marijuana in a hair-stat test.  J.B. was placed with his maternal grandfather.  The mother entered a residential treatment facility for substance abuse in October.  J.B. was returned to the mother's care at the treatment facility in December.  In February 2017, the mother tested positive for marijuana use.  In April, the mother tested positive for marijuana use again.

In May, while still living in the residential treatment facility, the mother admitted to picking up J.B. from daycare after using inhalants to get high.  J.B. was

---

[1] The father's rights were terminated in a separate order.  He is not a party to this appeal.

removed from her care and again placed with his maternal grandfather. On the day of the transition from the mother's care to the grandfather's, J.B. was diagnosed with an ear infection and was prescribed antibiotics. The mother failed to tell DHS or the grandfather about J.B.'s diagnosis or prescription for five days. That month, the treatment facility discharged her from the program and recommended another program for her. The mother did not follow through on the recommendation.

J.B. was adjudicated a child in need of assistance (CINA) in July. From May to August, the mother did not participate in any substance-abuse treatment and failed to consistently comply with drug testing. The mother was admitted to a substance-abuse treatment program in August. She tested positive for marijuana use on August 11, September 14, and September 27.

The mother has frequently missed visits with J.B. or failed to comply with procedures confirming her visits. She missed visitation four times in May, twice in June, once in July, three times in August, once in October, and twice in November. The mother was homeless after her release from the residential treatment facility in May and stayed with her mother or friends until December when she obtained an apartment.

In December, the mother overdosed on heroin. She was found unresponsive in the shower and was revived by paramedics. The mother tested positive in January 2018 for methamphetamine use.

The mother was discharged in February 2018 from the substance-abuse treatment program she began in August due to continuing substance abuse and attendance issues. The mother was admitted to an inpatient treatment facility on

February 28. Following a successful discharge from that facility in March, she began participating in an intensive outpatient program with housing. Her tentative discharge date from that program was in late June. The mother was able to resume visits with J.B. at that facility starting in April.

The mother is diagnosed with depression, anxiety, and PTSD. From September 2016 to May 2017, she attended two therapy sessions. The mother's therapist submitted a letter stating that the mother attended nine sessions from October 2017 to January 2018 but has not participated since then. The therapist's letter indicated the mother needed continuing mental-health counseling and substance-abuse treatment, stating, "If she does not remain sober and comply with treatment I am concerned that it may have serious, if not fatal consequences."

The State filed a broad—apparently a form—petition for termination of parental rights in February 2018, alleging the parents' parental rights should be terminated under Iowa Code section 232.116(1)(a), (b), (d), (e), (h), (i), and (*l*). The petition against both parents was supported by an affidavit containing factual assertions. The petition for termination of parental rights was set for hearing along with the continuation of the permanency hearing in April 2018. The district court terminated the father's rights but, as to the mother, found the child could be returned to the mother imminently and ordered continuing reunification efforts and continued placement with the maternal grandfather. The court summarily dismissed the State's petition for termination of the mother's parental rights for lack of proof without referring to any specific subsection of Iowa Code section 232.116(1).

The GAL and the State appeal the court's permanency order and dismissal of the petition to terminate parental rights. We turn to the order dismissing the petition for termination of parental rights, as this issue is dispositive of the appeal.

## II. Standard of Review.

We review termination proceedings de novo. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). We are not bound by the fact findings of the district court, but we do give them weight—especially when assessing witness credibility. *Id.* "Grounds for termination must be prove[d] by clear and convincing evidence." *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006). "Our primary concern is the best interests of the child." *Id.*

## III. Discussion.

> Termination of parental rights under Iowa Code chapter 232 follows a three-step analysis. The first step is to determine whether a ground for termination under section 232.116(1) is established. If so, the court then applies the best-interest framework set out in section 232.116(2) to determine if the grounds for termination should result in a termination of parental rights. If the statutory best-interest framework supports termination of parental rights, the court must finally consider if any of the factors set out in section 232.116(3) weigh against termination of parental rights.

*In re A.D.*, No. 14-0431, 2014 WL 4231062, at * 3 (Iowa Ct. App. Aug. 27, 2014) (reversing the court's order dismissing the termination petition and terminating both parents' parental rights when clear and convincing evidence supported termination and termination was in the children's best interests)*; see also In re J.L.*, No. 12-2024, 2013 WL 530906, at *2–4 (Iowa Ct. App. Feb. 13, 2013) (reversing an order dismissing the State's petition for termination of parental rights and terminating the parents' parental rights when the State proved by clear and convincing evidence

the statutory grounds for termination, termination was in the child's best interests, and there were no exceptions preventing termination).

The GAL claims the State proved grounds for termination as to the mother's rights by clear and convincing evidence under Iowa Code section 232.116(1)(d), (e), (h), (i), or (*l*).[2]  If the elements of any one of the grounds are proved by clear and convincing evidence, the first part of the analysis is met.  *Id.*  While we agree with the district court the State has failed to prove the grounds for termination under subsections (1)(d), (e), and (i), we disagree as to the elements of subsections (h) and (*l*).

Subsection 232.116(1)(d) requires a finding the child has been physically or sexually abused or neglected.  Subsection (e) requires evidence the mother has not maintained significant and meaningful contact with J.B.; the evidence in the record shows she has maintained meaningful contact.  Subsection (i) requires abuse or neglect that poses a significant risk to the life of the child or constitutes imminent danger to the child.  Neither the GAL, the State, nor the district court has indicated what event satisfies the element of abuse or neglect in subsections (d) or (i).

Section 232.116(1)(h) provides that termination may be ordered when "there is clear and convincing evidence that a child under the age of three who has been adjudicated a CINA and removed from the parents' care for at least the last six consecutive months cannot be returned to the parents' custody at the time of the termination hearing."  *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010); *accord*

---

[2] Subsections 232.116(1)(a) and (b) clearly do not apply.

Iowa Code § 232.116(1)(h). Here, J.B. turned three in March 2018. J.B. has been out of his mother's care since May 5, 2017, almost twelve months at the time of the permanency order. Before that, J.B. had been placed in relative care from September 2016 to December 2016. At the time of the termination hearing, J.B. had lived with his maternal grandfather for fifteen of the thirty-seven months of his life.

The mother argues the district court correctly found she was able to have the child returned to her. The district court found, "Technically, she would have the ability to have the child returned to her today. . . . [T]he court does believe that the mother will be in a position to have the child returned to her and that return is imminent." To prove that J.B. cannot be returned to the mother's care, the State must prove that, if returned to the mother's custody, J.B. would be exposed to harm which would justify his adjudication as a CINA. *See In re L.E.H.*, 696 N.W.2d 617, 619 (Iowa Ct. App. 2005).

At the time of the permanency hearing in April 2018, the mother had been sober for three months in a supervised setting. *See In re L.C.*, No. 17-0922, 2017 WL 3283397, at *4–5 (Iowa Ct. App. Aug. 2, 2017) (noting the court considers whether sobriety has occurred outside a custodial setting in making termination decisions). She had been participating in treatment for two months and still lived in an inpatient treatment facility at the time of the permanency hearing. She testified she had an apartment she could return to but did not have a job, a driver's license, or a mode of transportation. While we are hopeful for the mother's continued sobriety and successful treatment, her last-minute efforts are insufficient. *See In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000) ("Time is a critical

element. A parent cannot wait until the eve of termination, after the statutory time periods for reunification have expired, to begin to express an interest in parenting.").

Evidence of a parent's past performance may be indicative of the quality of the future care the parent is capable of providing. *In re L.L.*, 459 N.W.2d 489, 493 (Iowa 1990). The mother has been discharged from two treatment programs in two years for continuing drug use. She has not had a significant period of sobriety since the founded child-abuse assessment in September 2016. "We have long recognized that an unresolved, severe, and chronic drug addiction can render a parent unfit to raise children." *A.B.*, 815 N.W.2d at 776.

The district court found the mother's situation at the treatment facility would allow J.B. to be placed with her while she resided there and would allow for reunification. We take a longer view. We must consider J.B.'s long-term as well as immediate interests. *J.E.*, 723 N.W.2d at 798. Short-term improvement on the eve of termination is not enough for the child to safely return. *See C.B.*, 611 N.W.2d at 495 (finding "the changes in the two or three months before the termination hearing, in light of the preceding eighteen months, are insufficient"); *see also D.W.*, 791 N.W.2d at 707 (finding termination appropriate even though the mother did "display some improvement in some areas and was currently committed to sobriety"); *In re Z.R.*, No. 17-1004, 2017 WL 4050989, at *4 (Iowa Ct. App. Sept. 13, 2017) (finding termination appropriate when the mother's last-minute sobriety occurred in a custodial setting); *In re J.R.*, No. 17-0070, 2017 WL 1735914, at *2 (Iowa Ct. App. May 3, 2017) (finding termination appropriate even though the mother secured appropriate housing two months before the

adjudication hearing, stating, "We find her current living situation has not been sustained long enough to show she is able to maintain it"); *In re E.M.*, No. 16-1641, 2016 WL 6903519, at *2 (Iowa Ct. App. Nov. 23, 2016) (finding a three-month period of sobriety not enough time to demonstrate a consistent effort).

Given the mother's past failures to complete drug treatment successfully and to regularly attend visits, and how recent her achievement of sobriety in treatment is, we find J.B. would be at risk if he were returned to her care. Upon our de novo review of the evidence, we find the child cannot be safely returned to the mother's custody. The State has proved the grounds for termination under Iowa Code section 232.116(1)(h) by clear and convincing evidence.

We find the State also proved the elements of Section 232.116(1)(*l*). Subsection (*l*) requires: (1) the child is adjudicated CINA and the parent does not have custody, (2) the parent has a severe substance-abuse related disorder and presents a danger to self or others as evidenced by prior acts, and (3) clear and convincing evidence the parent's prognosis indicates the child will not be able to be returned to the custody of the parent within a reasonable period of time considering the child's age and need for a permanent home. Here, J.B. has been adjudicated CINA and is in the custody of his maternal grandfather. The mother has been diagnosed with cannabis and opioid dependence, and presents a danger to herself, as evidenced by her recent overdose. In making the decision whether J.B. can be returned to his mother's custody within a reasonable period of time, we consider "not only the child's age but the length and severity of the parent's substance abuse problem, the prognosis for long-term sobriety, and the likely harm to come to the child if returned home." *In re J.S.-G.*, No. 13–1795, 2014 WL 70306,

at \*1-2 (Iowa Ct. App. Jan. 9, 2014) (finding the child could not be returned within a reasonable time when the mother had been sober for five months but had a history of relapsing when not in a supervised setting). At the time of the termination hearing, the mother had been clean for three months and was two months into treatment. The mother has had issues with substance abuse since before the child's birth. At three years of age, J.B. does not have the ability to self-protect, is not regularly seen within the community, and cannot report his situation. We find the child cannot be returned within a reasonable time. The State proved the grounds for termination under section 232.116(1)(*l*) by clear and convincing evidence.

Next, the GAL and the State argue termination is in J.B.'s best interests. *See* Iowa Code § 232.116(2). In reaching our conclusion, we must "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *Id.* We agree termination is in J.B.'s best interests. While the mother and J.B. clearly share a bond, our legislature has limited the period in which parents can demonstrate they are capable of parenting. *J.E.*, 723 N.W.2d at 800. "The crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems." *In re A.C.*, 415 N.W.2d 609, 613 (Iowa 1987). "We do not 'gamble with the children's future' by asking them to continuously wait for a stable biological parent, particularly at such tender ages." *D.W.*, 791 N.W.2d at 707 (citation omitted).

The maternal grandfather has cared for the child for almost half of his life. The mother is still in a substance-abuse treatment program and is not able to care

for the child at this time. The record shows J.B. has thrived in his grandfather's care and the grandfather is willing to adopt him if the mother's parental rights are terminated. While the law requires a "full measure of patience with troubled parents who attempt to remedy a lack of parenting skills," this patience has been built into the timelines of chapter 232. *C.B.*, 611 N.W.2d at 494.

Finally, we must determine whether any of the exceptions to termination provided in Iowa Code section 232.116(3) should be applied. "A finding of any of these factors allows the court to avoid terminating parental rights, but the factors are permissive, not mandatory." *In re A.S.*, 906 N.W.2d 467, 475 (Iowa 2018) (citation omitted). "[O]nce the State has proven a ground for termination, the parent resisting termination bears the burden to establish an exception to termination." *Id.* at 476. The mother has not argued any exceptions to termination apply. While it is apparent the mother and J.B. share a bond, the record is devoid of any evidence showing termination would be detrimental to the child or that the maternal grandfather is willing to enter into a guardianship.

Because the State has met its burden of providing clear and convincing evidence for termination, we reverse the district court's order and terminate the mother's rights pursuant to section 232.116(1)(h) and (*l*).

**REVERSED.**